IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Hon. Paul S. Diamond |
| v. | : | Criminal No. 06-112 |
| ARTHUR D'AMARIO | : | |

Diamond, J.                                                             November 9, 2006

## MEMORANDUM

In December 2001, Defendant, Arthur D'Amario, "was convicted of ... threatening to kill a federal judge." United States v. D'Amario, 350 F.3d 348, 350 (3d Cir. 2003) (Alito, J.). See 18 U.S.C. § 115(a)(1)(B) (2000). The Government now charges that D'Amario has again threatened a federal judge – this time the judge who presided over D'Amario's 2001 trial. On March 9, 2006, I was designated and assigned to preside over this case. (Doc. No. 10). Trial is currently set to begin on December 4, 2006.

Acting *pro se*, D'Amario has challenged the Government's interpretation of the statute he is charged with violating, which provides in pertinent part as follows:

> Whoever ... threatens to assault, kidnap, or murder ... a United States judge ... with intent to impede, intimidate, or interfere with such ... judge ... while engaged in the performance of official duties, or with intent to retaliate against such ... judge ... on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a)(1)(B). Section 115 is one of several statutes that prohibit individuals from making threats. See, e.g., 18. U.S.C. § 871 (prohibiting threats against the President and successors to the Presidency); 18 U.S.C. § 875 (prohibiting threats transmitted in interstate commerce); 18 U.S.C. § 876 (prohibiting threats sent through the mail).

1

Relying primarily on the Supreme Court's decision in Virginia v. Black, D'Amario disputes the Government's interpretation of what constitutes a "true threat" under § 115. 538 U.S. 343 (2003). In D'Amario's view, "a true threat is when the speaker subjectively [sic] intended the speech as a threat." (Doc. No. 124 at 2). Thus, D'Amario apparently contends that the Government cannot secure his conviction under § 115 unless it proves that D'Amario actually intended to carry out his threat against the trial judge. (September 29, 2006 Tr. at 2-7). The Government responds that it is obligated to prove that a statement is a "true threat" under an "objective listener" standard: i.e., whether a reasonable person hearing the challenged utterance would deem it a threat. (Doc. No. 104-1 at 1). Thus, the Government argues that it is not required to prove that D'Amario actually intended to carry out his threat.

Although D'Amario's contentions are less than clear, I believe he has misconstrued and confused § 115's elements of criminal intent and wrongful act. As I explain below, whether D'Amario's utterance constitutes a "true threat" under § 115 does not turn on whether he actually intended to carry out the threat.

The Supreme Court created the "true threat" standard to determine whether a statement may, consistent with the First Amendment, constitute a crime. Watts v. United States, 394 U.S. 705, 707 (1969). During a Vietnam war protest, Watts stated that he had been drafted, and that if he was given a rifle, "the first man I want to get in my sights is L.B.J." Id. at 706 (internal quotations omitted). The Government charged Watts with violating § 871, which provides in pertinent part as follows:

> Whoever knowingly and willfully ... makes any ... threat against the President [of the United States] shall be [guilty of a crime].

2

18 U.S.C. § 871(a). The Supreme Court reversed Watts's conviction, holding that his statement did not constitute a "true threat," but instead was First Amendment-protected "political hyperbole." Id. at 708. Since Watts, the federal courts have opined extensively as to whether particular statements are "true threats."

In United States v. Kosma, the Third Circuit upheld the defendant's conviction under § 871 for threatening the President's life, concluding that an utterance is a "true threat" if

> the defendant intentionally make[s] a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or take the life of the President, and [if] the statement [is not] the result of mistake, duress, or coercion. The statute does not require that the defendant actually intend to carry out the threat.

951 F.2d 549, 557 (3d Cir. 1991) (quoting Roy v. United States, 416 F.2d 874, 877-78 (9th Cir. 1969) (emphasis removed)). At least six other Circuits have also adopted this "objective listener" standard for determining whether a communication is a "true threat" under § 871. See United States v. Manning, 923 F.2d 83, 85-86 (8th Cir. 1991); United States v. Hoffman, 806 F.2d 703, 707 (7th Cir. 1986); United States v. Rogers, 488 F.2d 512, 514 (5th Cir. 1974); United States v. Hart, 457 F.2d 1087, 1090-91 (10th Cir. 1972); United States v. Lincoln, 462 F.2d 1368, 1369 (6th Cir. 1972); United States v. Roy, 416 F.2d 874, 877-78 (9th Cir. 1969). See also United States v. Callahan, 702 F.2d 964, 965 (11th Cir. 1983) (Court adopts "objective" standard).

Courts have similarly construed § 115 and other threat statutes as requiring the Government to prove a "true threat" under an "objective listener" standard. See, e.g., United States v. Davila, 461 F.3d 298, 304-05 (2d Cir. 2006) (construing § 876); United States v. Martin, 163 F.3d 1212, 1216 (10th Cir. 1998) (construing § 115); United States v. Malik, 16 F.3d 45, 49-50 (2d Cir. 1994) (construing § 115); United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir. 1990) (construing §

3

876); United States v. Roberts, 915 F.2d 889, 891 (4th Cir. 1990) (construing § 115); Martin v. United States, 691 F.2d 1235, 1240 (8th Cir. 1982) (construing § 876). See also United States v. Alaboud, 347 F.3d 1293, 1296-97 (11th Cir. 2003) (Court adopts "objective" standard in construing § 875);

The rationale underlying these decisions is compelling, and was set out by the Third Circuit in Kosma. The proscription of threats is "meant to protect" not only the official's "life, but ... is also meant to prevent the disruptions and inconveniences which result from the threat itself, regardless of whether there is any intention to execute the threat." Kosma, 951 F.2d at 556. Thus, "the *threat alone* is disruptive of the recipient's sense of personal safety and well-being and is the true gravamen of the offense." Id. at 557 (quoting Manning, 923 F.2d at 86). See also Manning, 923 F.2d at 85-86; United States v. Fenton, 30 F. Supp. 2d 520, 524-27 (W.D. Pa. 1998).

D'Amario contends that the Black Court implicitly overruled all this authority, including Kosma. The appellants in Black had been convicted under a Virginia law that prohibited burning a cross "with the intent of intimidating any person or group ...." 538 U.S. at 358-63. See Va. Code Ann. § 18.2-423 (1996). The law included the following presumption:

> Any such burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons.

Id. The trial court instructed the jury that under this provision, "[t]he burning of a cross, by itself, is sufficient evidence from which you may infer the required intent." 538 U.S. at 364.

The trial court's instruction combined with the law's presumption troubled the Supreme Court, which did not agree that all cross-burnings were intended to intimidate: "Rather, sometimes the cross burning is a statement of ideology, a symbol of group solidarity." Id. at 365-66. Thus, in the Supreme Court's view, cross burnings that were not intended to intimidate "'would almost

4

certainly be protected expression.'" Id. at 366 (quoting R.A.V. v. St. Paul, 505 U.S. 377, 402, n. 4 (1922) (White, J., concurring in judgment)). Accordingly, the Court held that the statute's "prima facie" provision as applied in the jury instruction was overbroad under the First Amendment. Id. at 366-67. The Court underscored, however, that the First Amendment did not protect cross burnings intended to intimidate because these were "true threats":

> 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.

538 U.S. at 359.

D'Amario apparently contends that the Black Court thus held that the First Amendment precludes the prosecution of a threat unless the Government can prove that the speaker intended to carry out the threat. D'Amario has ignored the very next sentence of the Court's decision, however:

> **The speaker need not actually intend to carry out the threat.** Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur. Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.

538 U.S. at 359-60 (internal quotations omitted) (emphasis added).

The Kosma Court employed the same rationale in holding that a "true threat" would be determined under an objective standard. See Kosma, 951 F.2d at 556-58. Plainly, requiring the Government to prove that the utterer of a threat actually intended to carry out the threat would confound the reasoning of the Supreme Court and the Third Circuit that the making of the threat alone causes considerable harm and is not protected by the First Amendment. Accordingly, since Black, almost every Circuit to address the question of what constitutes a "true threat" has continued to apply an objective standard. See United States v. Davila, 461 F.3d 298, 304-05 (2d Cir. 2006);

5

United States v. Koski, 424 F.3d 812, 817 (8th Cir. 2005); United States v. Fuller, 387 F.3d 643, 646 (7th Cir. 2004); United States v. Alaboud, 347 F.3d 1293, 1296-97 (11th Cir. 2003); United States v. Nishnianidze, 342 F.3d 6, 16 (1st Cir. 2003).

The Ninth Circuit alone has questioned whether Black modified the "true threat" standard. In United States v. Cassel, the Court held that under Black, "speech may be deemed unprotected by the First Amendment as a 'true threat' only upon proof that the speaker subjectively intended the speech as a threat." 408 F.3d 622, 633 (9th Cir. 2005) (prosecution for interfering with federal land sale by intimidation). In United States v. Romo, however, the Ninth Circuit applied an objective standard in construing a threat against the President. 413 F.3d 1044, 1051 (9th Cir. 2005). Finally, in United States v. Stewart, the Court stated that "[w]e are not fully convinced that ... Romo's continued use of the objective 'true threat' definition is consistent with Black's subjective 'true threat' definition." 420 F.3d 1007, 1018 (9th Cir. 2005).

The Third Circuit does not share the Ninth Circuit's apparent inability to determine what comprises a "true threat." Indeed, since Black, the Third Circuit employed an objective standard to determine whether the defendant's mailing was a "true threat" under § 876. United States v. Zavrel, 384 F.3d 130, 136 (3d Cir. 2004). See also United States v. Robinson, 2006 WL 1976033 at *1 (3d Cir., July 14, 2006) (affirming that mailing of white powdery substance would cause reasonable person to perceive communication as a threat under § 876). Similarly, another court in this Circuit held that "the Supreme Court's definition of 'true threats' in Black is not inconsistent with the Third Circuit's decision in Kosma." United States v. Ellis, 2003 WL 22271671 at *4 (E.D. Pa., July 15, 2003). The court reasoned that Black merely restated the objective standard adopted in Kosma: "we see nothing in the Black opinion to indicate that the Supreme Court intended to overrule a majority

6

of the circuits by adopting a subjective test ...." Id.

Finally, in reviewing the sentence imposed on D'Amario after his 2001 conviction, the Third Circuit indicated quite clearly that § 115 does not require the Government to prove that the utterer of a threat actually intended to carry out his threat. D'Amario, 350 F.3d at 357. Following his 2001 conviction for violating § 115, the trial court had granted D'Amario's request for a downward departure under the then-mandatory Sentencing Guidelines. The court based its decision in part on its belief that D'Amario did not actually intend to carry out his threat. The Government appealed the downward departure and the Third Circuit – some seven months after Black – vacated the sentence imposed by the trial court and confirmed that § 115 does not require the Government to prove the utterer's subjective intent:

> Under U.S.S.G. § 2A6.1(b)(1), a court is instructed to increase the offense level by six "[i]f the offense involved any conduct evidencing an intent to carry out such threat." Thus, the base offense level is meant to apply to cases - such as the present one (as the District Court viewed it) - in which there is no evidence at all that the defendant intended to carry out his or her threat. Threatening communications are made criminal, not just because they may be harbingers of violence, but because they are harmful in themselves in many ways.

Id. In these circumstances, it is evident that the Third Circuit – in agreement with almost every other Circuit – requires the existence of a "true threat" to be determined under an objective standard. Accordingly, as required by Kosma, I will employ an "objective listener" standard in the instant case.

That conclusion does not relieve the Government of proving §115's *mens rea* element, however. The Government agrees that it must prove that D'Amario sent the threatening communication with the intent to impede, intimidate, or interfere with a federal judge while the judge was engaged in the performance of official duties, or with the intent to retaliate against the judge on account of his performance of official duties. (Doc. No. 123 at 3). See 18 U.S.C. §

7

115(a)(1)(B). See also United States v. Veach, 455 F.3d 628, 633 (6th Cir. 2006) ("Not only does § 115(a)(1)(B) require the government to prove beyond a reasonable doubt that the defendant threatened certain action against a government official but also that the defendant made such a threat for the specific purpose of interfering with the performance of official duties or of retaliating for the performance of such duties."); United States v. Fulmer, 108 F.3d 1486, 1493 (1st Cir. 1997) (discussing whether evidence at trial was sufficient for rational jury to find that defendant made a threat "with the intent to impede, intimidate, or interfere with [the victim] in the performance of his duties, or to retaliate against him, within the meaning of 18 U.S.C. § 115(a)(1)(B)") (internal quotations omitted); United States v. Fenton, 30 F.Supp.2d 520, 527-30 (W.D. Pa. 1998) (finding evidence insufficient to show that defendant possessed the intent required by the statute).

## CONCLUSION

In sum, I reject D'Amario's apparent contention that § 115 requires the Government to prove that he actually intended to carry out his threat. As the Government acknowledges, however, it is required to prove under § 115 that D'Amario made his statement with the specific intent to impede, intimidate, interfere, or retaliate against a federal judge.

BY THE COURT.

November 9, 2006

/s Paul S. Diamond, J.

Date

Paul S. Diamond, J.

8