IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Paul S. Diamond |
| | : | |
| v. | : | Criminal No. 06-112 |
| | : | |
| ARTHUR D'AMARIO | : | |

Diamond, J.                                                           November 3, 2008

## MEMORANDUM

Defendant, Arthur D'Amario, contends that "newly discovered evidence" requires me to overturn his conviction for threatening to murder a federal judge. Fed. R. Crim. P. 33. I will deny his Motion.

I.     **Procedural History**

On February 14, 2006, the grand jury charged Defendant with threatening the Honorable Joseph E. Irenas of this Court. 18 U.S.C. § 115(a)(1)(B). Judge Irenas had presided over Defendant's 2001 trial, when D'Amario was convicted of threatening to murder the Honorable Joseph DiClerico of the District of New Hampshire.

The matter was assigned to me after I was designated to sit in this District on March 10, 2006. I appointed Ralph Jacobs, Esquire, to represent Defendant. After determining that D'Amario was competent to stand trial, I granted his request to represent himself, and appointed Mr. Jacobs as stand-by counsel. See United States v. Peppers, 302 F.3d 120, 136-37 (3d Cir. 2002) (setting out prerequisites for allowing a criminal defendant to represent himself). Among his duties as stand-by counsel, Mr. Jacobs helped Defendant (who was in custody) obtain

1

evidence and witnesses and otherwise prepare for trial. (See, e.g., Doc. No. 151; 12/1/06 Hearing; 12/4/06 Hearing.)

Trial was set to begin on December 5, 2006. On December 4th, Defendant sought a continuance to secure the presence of fellow inmate Scott Gabriele. Over the Government's objection, I granted Defendant's request and rescheduled the commencement of trial to December 11, 2006. On December 8th, Defendant stated that he no longer wished to represent himself and asked that Mr. Jacobs represent him at trial. After determining that Mr. Jacobs was prepared to try this case, I granted Defendant's request. Trial began on December 11th and concluded on December 15, 2006, when the jury convicted D'Amario of threatening to murder Judge Irenas.

On March 26, 2007, I sentenced Defendant to 84 months incarceration followed by three years of supervised release. (Doc. No. 214.) Defendant's direct appeal is presently pending. C.A. No. 07-1955. (Doc. No. 215.) Since his conviction, D'Amario has filed numerous Rule 33 Motions for a New Trial. (See e.g., Doc. Nos. 165, 218, 231, 257, 273.) I denied his counseled motion on the merits. (Doc. No. 210.) I denied his *pro se* motions because he was not entitled to hybrid representation. (Doc. Nos. 219, 234, 258, 281); United States v. D'Amario, 2007 WL 4248853, *1 (3d Cir. 2007) ("[T]he Constitution does not confer a right to proceed simultaneously by counsel and pro se, and the District Court was not obligated to consider D'Amario's motions in light of his being represented by counsel on direct appeal."). Proceeding *pro se*, Defendant has also unsuccessfully sought a writ of mandamus to enjoin publication of my Memorandum Opinion denying his earlier Rule 33 motion. In Re: D'Amario, C.A. No. 07-1768.

On May 25, 2007, I allowed Mr. Jacobs to withdraw after Defendant challenged his lawyer's competence. (See Doc. No. 221; Doc. No. 228.) On October 18, 2007, I appointed

Michael Paul, Esquire, to represent Defendant in all post-conviction proceedings. (Doc. No. 246.)

## II.    The Instant Motion

On July 11, 2008, Mr. Paul filed a Motion for a New Trial on D'Amario's behalf. (Doc. No. 276.) Defendant alleges that newly discovered evidence, which the Government improperly withheld during discovery, "would probably [have] produce[d] an acquittal," had it been presented at trial. (Doc. No. 276-2 at 3.)

The newly discovered evidence is a Bureau of Prisons document apparently written in February 2006. Then incarcerated at the United States Medical Center in Springfield, Missouri, D'Amario was to begin on February 10, 2006 serving a four month term of supervised release imposed by Judge Irenas. D'Amario did not want to serve any term of supervised release, and believed that if he could induce the Court to order that he serve an additional thirty days in prison, he could avoid supervised release altogether. Accordingly, on January 17, 2006, Defendant submitted to Judge Irenas a "Motion to Revoke Supervised Release" and supporting "Memorandum" in which he stated:

> Defendant is serving sentences imposed in the districts of Rhode Island and New Jersey. ... If discharged on Feb. 10, he will violate the same day. Fourteen months ago, upon finding that Defendant is violent, dangerous, schizophrenic, and determined to get a gun, Judge Smith employed ... 3583(e)(2) to revoke/modify his supervised release .... The court should heed the warning of Justice Alito ... that Defendant is extremely dangerous. ... He will not serve probation. He will not take orders from federal judges and probation officers. It is safer to revoke his supervision now, and extend his detention, than to speculate on how this "schizophrenic" who passionately hates NJ judges will react to sudden liberty on Feb. 10.

After he read the January 17th Memorandum, Judge Irenas asked the Marshal's Office to

3

conduct a threat assessment of the document. One week before Defendant's February 14, 2006 indictment, a secretary from the New Jersey United States Attorney's Office apparently telephoned USMC Springfield staffer James Reeves regarding D'Amario. Defendant bases his latest Rule 33 Motion on the resulting document Mr. Reeves authored, which states as follows:

>                                                             Date 2/7/06
>
> MEMORANDUM FOR CENTRAL FILE
>
> FROM:           Jim Reeves
>
> SUBJECT:        D'AMARIO, ARTHUR # 02989-070
>
> On February 7, 2006, at approximately 10:15 a.m. I received a phone call from Michelle [redacted], Assistant, United States Attorney's Office, District of New Jersey, at Camden, telephone number 856-757-XXXX. Ms. [redacted] advised me she was faxing a letter to our facility upon direction of her supervisor, Assistant United States Attorney, Ron [redacted]. The letter was written by inmate D'Amario and their office believed it was threatening toward a United States District Judge.
>
> I received the attached faxed copy of the correspondence written by inmate D'Amario. The correspondence was reviewed by Jon Roberts, Unit Manager, Dr. Russ Carter, inmate D'Amario's assigned clinician and Dennis Bitz, Staff Attorney. Mr. Bitz indicated he did not believe the correspondence was threatening and there was no justification to maintain custody of inmate D'Amario and [he] should be released on his release date of February 10, 2006.
>
> This information was relayed to Ms. [redacted] in the United States Attorney's Office and she requested a copy of the flight itinerary for his release date of February 10, 2006. I e-mailed a copy of the itinerary to Ms. [redacted] and Mr. [redacted].

Defendant states that he did not obtain this document until almost a year after his trial. (Doc. No. 276-2 at 1-2.) D'Amario has submitted an affidavit from Mr. Jacobs that if he had the Reeves Document, he would have sought to use it at trial. (Doc. No. 276, Ex. B.)

D'Amario argues that the Reeves Document is "newly discovered evidence" that entitles

him to a new trial, and that the Government's failure to provide him with the Document constitutes a "Brady violation *per se*," also warranting a new trial. (Doc. No. 276-2 at 2.) I do not agree.

### III. Defendant's Request for an Evidentiary Hearing

On October 17 and 22, 2008, I conducted conference calls to determine if Defendant sought an evidentiary hearing on his Rule 33 Motion. Mr. Paul ultimately stated that he was seeking a hearing so that he could present the testimony of Mr. Jacobs. As I explain below, counsel also stated that he did not intend to call Dennis Bitz at any Rule 33 hearing. (10/22/08 Tr. at 7.)

### IV. Jurisdiction

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). If a defendant moves for a new trial based on newly discovered evidence while his direct appeal is pending, "the court may not grant [the] motion . . . until the appellate court remands the case." Fed. R. Crim. P. 33(b)(1). The Supreme Court has clarified, however, that the trial court retains jurisdiction "either [to] deny [a Rule 33] motion on its merits, or certify its intention to grant the motion." United States v. Cronic, 466 U.S. 648, 667 n.42 (1984).

### V. Legal Standards

#### A. Newly Discovered Evidence

In reviewing a Rule 33 motion based on newly discovered evidence, I am obligated to apply a five-part test:

5

> (a) the evidence must be[,] in fact, newly discovered, i.e., discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) evidence relied on[ ] must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Jasin, 280 F.3d 355, 361 (3d Cir. 2002) (quoting United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976)); United States v. Barbosa, 271 F.3d 438, 468 (3d Cir. 2001); United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000). "[T]he movant has a heavy burden of proving each of these requirements." United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (internal quotations omitted). "Courts should exercise great caution in setting aside a verdict reached after fully-conducted proceedings, and particularly so where the action has been tried before a jury." United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008) (internal quotations omitted).

    B.    Brady Obligations

In 1963, the Supreme Court set out the prosecution's obligation to disclose exculpatory evidence to the defense:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Brady v. Maryland, 373 U.S. 83, 87 (1963). Over the ensuing forty-five years, the Supreme Court has repeatedly addressed the nature and scope of the prosecution's Brady obligations. See, e.g., United States v. Bagley, 473 U.S. 667, 682 (1985); Giglio v. United States, 405 U.S. 150 (1972). The Court has set out the elements of a Brady violation as follows:

6

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

The Third Circuit has recently restated this formulation, holding that to make out a Brady violation, the defendant must show that: "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." United States v. Pelullo 399 F.3d 197, 209 (3d Cir. 2005) (quoting United States v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997)).

## VI.    Discussion

This is not the first time that Defendant has sought a new trial based on "newly discovered evidence" or the prosecution's purported violation of Brady. (Doc. Nos. 166 at 6-7; 208.) I rejected those earlier allegations as baseless. (Doc. No. 210 at 20-24.) His present contentions fare no better.

### A.    Newly Discovered Evidence

Defendant is unclear with respect to how he would have used the Reeves Document if he had obtained it before trial. Defendant suggests that the Document would have provided the defense with several helpful opinions:

> The [Reeves Document] was drafted by individuals who had been monitoring Mr. D'Amario's conduct and behavior, and thus were in a position to provide a rebuttal/expert opinion as to the interpretation of the letter [i.e., D'Amario's January 17th Memorandum]. Throughout the course of trial it was Mr. D'Amario's position that the letter was not a "true threat" but Mr. D'Amario had somewhat of a sarcastic interpretation of the judicial process, and, therefore, the intent of the writer, Mr. D'Amario, was not to be interpreted as a threat towards a United States District Judge . . . .

7

(Doc 276-2 at 2-3.) Contrary to Defendant's suggestion, the Reeves Document was authored by only one person -- James Reeves -- who expressed no opinion as to the January 17th Memorandum or Defendant's state of mind. Rather, Mr. Reeves apparently restated the purported "belief" of only one person – "Staff Attorney" Dennis Bitz – respecting the January 17th Memorandum. Defendant does not explain the basis of Mr. Bitz's opinion, or offer any other information about Bitz himself or his relationship (if any) with Defendant.

In any event, Defendant has not met his "heavy burden of proving each of [the Iannelli] requirements." Cimera, 459 F.2d at 458 (quoting United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000)). Rather, he has shown only that he obtained the Reeves Document after trial – a fact the Government concedes. (10/17/08 Tr. at 6.)

1. Due Diligence

The defense fails to show that it was unable to obtain the Reeves Document before trial. The Document apparently was kept in Defendant's USMC Springfield file. Bureau of Prisons regulations provide that every prisoner is permitted to review the contents of his or her file. See 28 C.F.R. § 513.40; Bureau of Prisons Program Statement 1351.05 at 12-21. Defendant's Motion and Memorandum include no allegation that the Bureau of Prisons denied Mr. Jacobs access to Defendant's prison file; Mr. Jacobs's declaration is silent on any efforts to review the file. Mr. Jacobs was certainly aware that the staff and inmates at USMC Springfield might offer testimony Defendant considered helpful. For instance, Mr. Jacobs sought to present Dr. Carter's testimony at trial, and successfully sought a continuance of the trial's commencement so that he could call former Springfield inmate Scott Gabriele to testify about Defendant. (12/11/06 Tr. at 10-14; 12/13/06 Tr. at 151-59; 12/4/06 Hearing.)

Nothing prevented Mr. Jacobs from contacting others at USMC Springfield to determine their views of Defendant or his January 17th Memorandum. Nor did anything prevent Mr. Jacobs from subpoenaing Defendant's prison file. In these circumstances, Defendant has not met the due diligence prong of the Iannelli test. See Cimera, 459 F.3d at 461 ("Evidence is not newly discovered if it was [actually] known or could have been known by the diligence of the defendant or his counsel.") (internal quotations omitted); Kelly, 539 F.3d at 182-83 (the defendant's failure to question known witness before trial is not reasonable diligence).

2. Cumulative Evidence

To the extent Defendant would have used the Reeves Document to develop testimony that D'Amario often displayed "a sarcastic interpretation of the judicial process," that evidence would have been cumulative. (Doc. No. 276-2 at 3.)

Assistant Federal Defender Lori Koch, who represented Defendant during his 2001 prosecution for threatening Judge DiClerico, testified at trial in the instant case. She explained to the jury both her familiarity with Defendant, and his attitude toward federal judges:

> I would characterize Mr. D'Amario as a very sarcastic person. . . . He would say intemperate things in his filing to Judge Irenas, in his letters to Judge Irenas, and also with me, all of his letters, not all of them, but many of them would say intemperate things. . . . Almost every letter that Mr. D'Amario ever wrote had a variety of intemperate allegations in them.

(12/13/06 Tr., at 164:23-24; 184:3-6; 187:18-19.) Lucille O'Keefe, Judge Irenas's secretary, similarly acknowledged on cross-examination that she initially believed the January 17th Memorandum was "a feeble attempt at sarcasm[.]" (12/12/06 Tr. at 178:17-22.)

In these circumstances, Mr. Bitz's "belief" concerning Defendant's sarcastic attitudes was cumulative of other trial evidence, and so does not meet the third Iannelli requirement.

9

### 3. Materiality

To the extent Defendant would have used Mr. Bitz's "belief" at trial to show that the January 17th Memorandum itself was not threatening, that opinion would have been immaterial.

As I explained in my earlier decisions in this matter, to determine at trial whether Defendant's utterance was a "true threat," I applied the Third Circuit's "objective recipient" standard:

> [A statement is a "true threat" if] the defendant intentionally make[s] a statement, written or oral, in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or take the life of the [threatened person], and [if] the statement [is not] the result of mistake, duress, or coercion. The statute does not require that the defendant actually intend to carry out the threat.

United States v. Kosma, 951 F.2d 549, 557 (3d Cir. 1991) (quoting Roy v. United States, 416 F.2d 874, 877-78 (9th Cir. 1969) (emphasis removed)). (See Doc. Nos. 137, 210.)

Under this standard, a "third party's" interpretation of the January 17th Memorandum – whether from Mr. Bitz or any other prison staffer – was irrelevant. Indeed, the only relevant interpretation of the Memorandum was that of Judge Irenas himself. See United States v. Davila, 461 F.3d 298, 305 (2d Cir. 2006) ("proof of the effect of the alleged threat upon the addressee is highly relevant") (quoting United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994)); United States v. Nishnianidze, 342 F.3d 6, 16 (1st Cir. 2003) ("the fact-finder may consider ... the effect of the statement on the recipient"). Accordingly, even though Defendant elected not to call Judge Irenas at trial, I nonetheless allowed D'Amario to present abundant trial evidence and argument respecting Judge Irenas's state of mind. (See, e.g., 12/13/06 Tr. at 160-69, 183-84; 12/15/06 Tr. at 44-46.)

In these circumstances, Mr. Bitz's interpretation of the January 17th Memorandum does not meet Iannelli's materiality requirement.

### 4. Probability of Acquittal

Mr. Bitz's "belief" – as recorded in the Reeves Document – is, of course, double hearsay and so would have been inadmissible at trial. See Fed. R. Evid. 805; Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 134 (3d Cir. 1997) ("For these comments to have been properly admitted then, we must find each level of hearsay to fall within some applicable exception."). Because Defendant's "newly discovered evidence" was thus hearsay and immaterial, it was doubly inadmissible and so necessarily could not have resulted in Defendant's acquittal. See United States v. Wall, 389 F.3d 457, 470-71 (5th Cir. 2004) (Rule 33 motion for new trial may not be based on inadmissible, hearsay evidence); United States v. Parker, 903 F.2d 91, 102-03 (2d Cir. 1990) ("[The probability of acquittal] principle presupposes, of course, that the proffered new 'evidence' would be admissible at the new trial."); United States v. MacDonald, 779 F.2d 962, 964 (4th Cir. 1985) ("To obtain a new trial on the basis of after discovered evidence, that evidence must be admissible in a new trial.").

The inadmissibility of Mr. Bitz's opinion notwithstanding, I will nonetheless determine whether its pre-trial disclosure to Defendant or its presentation to the jury could have affected the verdict in this case. See United States v. Kelly, 539 F.3d 172, 189 (3d Cir. 2008) (District court must "weigh [the evidence] against all of the other evidence in the record, including the evidence already weighed and considered by the jury in the defendant's first trial.").

During the October 22nd conference, Mr. Paul stated that he had contacted the four USMC Springfield staffers mentioned in the Reeves Document to determine if they could offer

11

Defendant any helpful testimony. Mr. Paul explained that Mr. Bitz alone responded (in a letter Mr. Paul could not locate), apparently indicating that in light of Defendant's conviction in the instant case, he could not offer any helpful testimony. Accordingly, Mr. Paul stated that he would not call Mr. Bitz at any Rule 33 hearing. (10/22/08 Tr. at 6-7.) I nonetheless remain obligated to follow the <u>Kelly</u> Court's direction to "make a credibility determination as part of [my] probability-of-acquittal inquiry." <u>Kelly</u>, 539 F.3d at 189. Accordingly, I will assume, <u>arguendo</u>, that before Defendant's conviction in the instant case, Mr. Bitz believed that the January 17th Memorandum was not threatening, and, if called as a witness at Defendant's trial, would have truthfully testified to that effect.

In rejecting Defendant's Motion for Acquittal, I described the compelling evidence of Defendant's guilt presented at trial. (Doc. No. 210 at 5-7.) Weighed against that evidence – including the language of the January 17th Memorandum itself, the Memorandum's context, Judge Irenas's reaction to the Memorandum, and Judge Irenas's knowledge of Defendant's violent, threatening nature – I find that the jury's consideration of Mr. Bitz's opinion could not possibly have resulted in Defendant's acquittal.

In sum, Defendant has failed to show: (1) due diligence; (2) that the Reeves Document was not cumulative; (3) materiality; or (4) that the Document would probably have resulted in his acquittal. Because Defendant has failed to meet his burden under <u>Iannelli</u>, I will deny his claim for relief based on newly discovered evidence.

    B.    <u>Brady Violation</u>

Defendant suggests that the Government's failure to produce the Reeves Document during pretrial discovery is a "Brady violation *per se*." (Doc. No. 276-2 at 2.) Although

Defendant offers no analysis or legal argument in support of this suggestion, I will nonetheless address it.

The prosecutor in this case met the Government's discovery obligations. He produced Brady, Jencks, and Rule 16 materials well before trial. (See, e.g., Doc. No. 117). When the prosecutor was in doubt as to whether evidence was Brady material, he followed the procedure set out by the Third Circuit, and sought a ruling from the Court. See 10/5/06 Sealed Order; United States v. Dent, 149 F.3d 180, 191 (3d Cir. 1998) (District Court's *in camera* inspection of potential Brady material satisfies due process).

The prosecutor states that he did not have the Reeves Document before trial, but learned of it only when Defendant filed the instant Motion. (Doc. 280 at 3.) There was no reason for the prosecution to have the Document. Although Mr. Reeves purported to record a conversation he had with a secretary who worked in the New Jersey United States Attorney's Office, he does not indicate that he sent a copy of his Document to her or anyone else in that Office. Rather, Mr. Reeves indicates only that: 1) he emailed Defendant's proposed travel itinerary to the United States Attorney's Office; and 2) "information was relayed" to the secretary – presumably during a telephone discussion. Although Mr. Reeves does not indicate precisely what "information" he "relayed," he likely told the secretary only that USMC Springfield intended to release Defendant from custody on February 10, 2006. I will nonetheless assume that Mr. Reeves also told the secretary that Mr. Bitz did not believe Defendant's January 17th Memorandum was threatening.

Defendant has not met his burden under Pelullo. I will accept that Mr. Bitz's interpretation of the January 17th Memorandum is "favorable to the defense." That interpretation was equally available to both sides, however – whether by subpoenaing

13

Defendant's USMC Springfield file or by interviewing Mr. Bitz or Mr. Reeves. That Mr. Jacobs apparently chose to do none of these hardly means that the Government "suppressed" evidence. See United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984) ("[T]he government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.") (quoting United States v. Campagnuolo, 592 F.2d 852, 861 (5th Cir. 1979)); see also Raley v. Ylst, 470 F.3d 792, 804 (9th Cir. 2006) ("[W]here the defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the Government does not commit a Brady violation by not bringing the evidence to the attention of the defense.") (quoting United States v. Brown, 582 F.2d 197, 200 (2d Cir. 1978)).

Finally, as I have explained, the Reeves Document is not "material either to [Defendant's] guilt or punishment." Pellulo, 399 F.3d at 209.

In these circumstances, it is apparent that Defendant has failed to meet his burden under Pellulo, and that no Brady violation occurred.

C.  Requested Hearing

Defendant wishes to give Mr. Jacobs the opportunity to "elaborate" on how he would have sought to use the Reeves Document. (10/17/08 Tr. at 6; 10/22/08 Tr. at 3.) I certainly accept that Mr. Jacobs would have sought to use the Document to Defendant's best advantage. As I have explained, however, the Document constitutes cumulative, immaterial, or otherwise inadmissible evidence. Insofar as Mr. Jacobs would have used the Document as a road map to obtain favorable "opinions" from USMC Springfield witnesses, that evidence would also have been inadmissible. Accordingly, Mr. Jacobs's proffered "elaboration" is beside the point.

### VII. Conclusion

Defendant has not satisfied his heavy burden under <u>Iannelli</u>, nor has he made out a <u>Brady</u> violation. Accordingly, I deny Defendant's Motion for a New Trial. (Doc. No. 276.) An appropriate Order follows.

                **BY THE COURT**

                */s Paul S. Diamond*

                _____

                **Paul S. Diamond, J.**