IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 06-112 |
| : | |
| ARTHUR D'AMARIO : | |
| : | |

## ORDER

I.  BACKGROUND

On February 14, 2006, the grand jury charged Defendant Arthur D'Amario with threatening to murder the Honorable Joseph E. Irenas of this Court. 18 U.S.C. § 115(a)(1)(B). Judge Irenas had presided over the 2001 trial at which Defendant was convicted of threatening to murder the Honorable Joseph DiClerico of the District of New Hampshire.

The instant matter was assigned to me after I was designated to sit in this District on March 10, 2006. Trial began on December 11, 2006 and concluded on December 15th, when the jury convicted Defendant of threatening to murder Judge Irenas. On March 26, 2007, I sentenced Defendant to 84 months incarceration followed by three years of supervised release. (Doc. No. 214.) The Third Circuit rejected Defendant's direct appeal. (Doc. No. 252.) Defendant unsuccessfully challenged the competency of his trial and collateral relief counsel, and the Third Circuit again affirmed. (Doc. Nos. 235, 254, 313, 403, 410.) In addition, Defendant has repeatedly and unsuccessfully sought myriad forms of relief, including my disqualification and the issuance of writs of mandamus. (Doc. Nos. 114, 235, 251, 315, 336, 367, 414, 421, 467.)

Immediately after Defendant was released from prison on June 20, 2012, he objected to serving his three year term of supervision in this District, and requested the transfer of that

supervision to the District of Rhode Island or Arizona. (Doc. Nos. 431, 436.) Because neither District would agree to the transfer, I denied Defendant's request. 18 U.S.C. § 3605 (transferee court must consent to transfer); (Doc. Nos. 432, 446.) The Third Circuit affirmed. (Doc. No. 449.)

The District of New Jersey Probation Department did an exceptional job supervising Defendant. Because he had no plan for lodging, Probation arranged for Defendant's temporary residence at the Red Roof Inn in Mount Laurel, New Jersey. Probation helped Defendant purchase groceries and other necessities, and contracted for his mental health services. Probation obtained Second Chance funding to pay for Defendant's housing and transportation, even after he began receiving Social Security disability benefits. In February 2013, because the Second Chance funds were depleted, Probation informed Defendant that he would have to pay for his own lodging after March 1, 2013. By then, Probation had spent over $14,000 on Defendant's housing.

On March 1, 2013, Defendant checked out of the Red Roof Inn without notifying Probation. On March 5, 2013, Probation issued a Notice of Violation of Supervised Release and I approved a warrant for Defendant's arrest. That same day, the United States Marshals learned that Defendant was imprisoned in Toronto, Canada. Defendant was extradited to the United States later that month. On April 5, 2013, I appointed Gilbert Scutti to represent Defendant in this matter. (Doc. No. 456.)

On May 23, 2013, I held a preliminary hearing and a revocation hearing. (Doc. No. 482.) Defendant sought to represent himself, with Mr. Scutti as standby counsel. (Tr. at 3:7-13.) After conducting the required colloquy, I found that he had knowingly and voluntarily waived his right to counsel and allowed him to represent himself. (Tr. at 6:4-11:10); United States v. Peppers, 302 F.3d 120, 136-37 (3d Cir. 2002). I also allowed Mr. Scutti to speak and act directly on Defendant's behalf whenever Defendant allowed Mr. Scutti to do so. (Tr. at 57:10-61:15; 75:4-82:18; 90:8-92:18; 120:1-124:9.) I offered to continue the hearing when Defendant stated that he felt unwell.

(Tr. at 5:25-6:1.) Defendant refused the continuance: "I'm pretty well prepared and now that I'm here, I'd like to go forward with [the hearing]." (Tr. at 6:2-3.)

Defendant was charged with violating his supervised release by leaving the District without permission and by failing to notify Probation within 72 hours of any change of residence. (Am. Pet.) Because Defendant would not stipulate to probable cause or to his violation of supervision, the Government produced evidence of both in two separate, successive hearings. (Tr. at 12:24-13:7; 26:12-15.)

II. <u>FINDINGS OF FACT</u>

I credit the testimony of Probation witnesses Steven Alfrey and Valencia Sherrer, and largely discredit Defendant's testimony. (Tr. at 105:5-7.) I find that the Government has proven the following facts by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3).

Defendant's supervised release began on June 20, 2012. (Tr. at 29:12-13.) In August 2012, Defendant began receiving $1,200 to $1,500 a month from Social Security. (Tr. at 31:17-18.) Without informing Probation, in September 2012, Defendant obtained a passport. (Tr. at 83:10-15.) Because Probation paid for his lodging and transportation, Defendant was able to amass over $5,000 before he absconded to Canada. (Tr. at 78:3-7.)

On March 1, 2013, Defendant checked out of Red Roof Inn, traveled by bus to the Newark Airport, and purchased a one-way ticket to Toronto with cash. (Tr. at 38:6-7; 83:4-7.) Defendant testified that he flew to Canada purportedly because he was a "political prisoner" in the United States; he purportedly intended to seek political asylum in Canada. (Tr. at 82:25-86:15.) Canadian authorities apparently took a dim view of Defendant's "political prisoner" claim: they immediately arrested him and detained him at the Metro Toronto West Detention Center. (Tr. at 82:18-21); (Doc.

3

No. 478, Ex. 3.) Although Defendant had access to a phone at the Center, he did not attempt to contact Probation. (Tr. at 88:1-89:7.)

During the May 23rd hearing, Defendant argued primarily that his supervision violated the Eighth Amendment because living in New Jersey constituted cruel and unusual punishment. (Tr. at 45:13-15; 75:24-80:14.) On this issue of first impression, I disagreed and found Defendant had violated the conditions of supervision.

With a Level V criminal history, Defendant's advisory guideline range was 7 to 13 months of incarceration plus 24 months of supervision less any term of incarceration imposed. (Tr. 107:23-108:18.) When the sentencing portion of the May 23rd hearing began (after I found that Defendant had violated the conditions of supervision), I informed Defendant that I was considering an upward variance. (Tr. at 106:19-21.) In light of Defendant's lengthy and serious criminal history and the evidence presented, I found, inter alia, that Defendant had no regard for the law, that he would violate any law or Court order with which he disagreed, that Defendant was likely to commit additional crimes, and that Defendant needed to be deterred from such illegal conduct. (Tr. at 125:17-127:19.) I stated that I intended to sentence Defendant to the statutory maximum of 24 months incarceration with no supervised release. (Tr. at 127:20-25.) When I asked Defendant whether there was any reason why this intended sentence should not be imposed, Defendant responded, "No." (Tr. at 127:25-128:2.) I then varied upward and imposed the sentence of 24 months incarceration.

III. CONCLUSIONS OF LAW

Invoking "Rule 59(e)," Defendant now asks me to "reconsider" his sentence. (Doc. No. 484.) The law does not authorize me to "reconsider" a sentence I have imposed. See United States v. Dotz, 455 F.3d 644, 648 (6th Cir. 2006). Criminal Rule "59(e)" does not exist, and Civil Rule 59

4

is inapplicable in this violation of supervision proceeding. See United States v. Damon, 59 F. App'x 619, 621 (6th Cir. 2003). Accordingly, I will construe Defendant's Motion as one to modify his sentence. A district court may modify a sentence only in very limited circumstances: (1) on appeal under 18 U.S.C. § 3742; (2) upon a motion from the Bureau of Prisons; (3) if permitted by statute, (4) pursuant to Criminal Rule 35; or (5) where the court based the sentence on a guideline range that the Sentencing Commission later lowered. See 18 U.S.C. §§ 3582; 3742; Fed. R. Crim. P. 35.

Grounds one, two, three, and five do not apply here. Under Rule 35, I may correct only a sentence that resulted from arithmetical, technical, or other clear error. Id. I may modify under Rule 35 only if the sentence is the product of reversible error. Fed. R. Crim. P. 35 advisory committee's note, 1991 amendments.

Defendant argues that I should modify his sentence because: (1) his counsel was ineffective in failing to negotiate an agreement with the Government respecting sentence; (2) I provided insufficient notice that I was considering an upward variance; (3) Federal Rule of Criminal Procedure 32.1(b)(2)(C) guaranteed Defendant the opportunity to present additional evidence to corroborate his May 23, 2013 testimony; and (4) he cannot be charged with failing to notify Probation about his change in address because he was incarcerated in Canada. (Doc. Nos. 484, 486.) I will deny Defendant's Motion.

### A. *Ineffective Assistance of Counsel*

Defendant's claims are contradictory. He alleges that Mr. Scutti was ineffective for failing to negotiate a suggested sentence with the Government to avoid the upward variance he knew I would effect:

> Defendant told [Mr. Scutti] . . . he'd receive the maximum sentence from the trial judge after a [violation of supervised release] hearing, so he preferred to strike a deal . . ."

(Doc. No. 484, Ex. 1 at 1.) Yet, Defendant also alleges a prejudicial "lack of notice" that I might vary upward. (Id.)

Defendant's ineffective assistance argument fails because "Rule 35 does not reach a claim of ineffective assistance of counsel." Johnson v. Williams, No. CIV.A. 00-851, 2001 WL 34368397, at *1 (D. Del. Feb. 16, 2001); see also United States v. Mancuso, 145 F.3d 1342, 1342 (9th Cir. 1998).

Even if Defendant could raise the ineffective assistance claim now, the record conclusively refutes the suggestion that Mr. Scutti was ineffective. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir.1991). Defendant never indicated during the May 23rd hearing that he wished to reach an agreement of any kind with the Government. Had he wanted the opportunity to negotiate, he could have accepted my offered continuance and then attempted to reach a compromise with the Government. Defendant demonstrated no such conciliatory attitude. Rather, he refused to stipulate that there was probable cause of his violation, to the evidence the Government presented on May 23rd, or to the violation itself. (Tr. at 12:24-13:7; 26:12-15.) The record thus refutes Defendant's ineffectiveness claim: Defendant never wanted to "strike a deal" with the Government; as he stated on May 23rd, he wanted to "go forward" with the revocation hearing. (Tr. at 6:2-3.)

### B.   *Notice of Upward Variance*

Once again, Defendant alleges that he knew *before* the May 23rd hearing that I would vary upward and impose the maximum 24 month sentence. (Doc. No. 484, Ex. 1 at 1.) It is, thus, difficult to understand how he can also allege that "inadequate notice" of the upward variance prejudiced him. In any event, although Defendant would have been entitled to notice of an upward *departure*,

he was not entitled to notice of an upward *variance*. Compare United States v. Himler, 355 F.3d 735, 741 (3d Cir. 2004) (upward departure) with United States v. Vampire Nat'l, 451 F.3d 189, 197 (3d Cir. 2006) (upward variance). Finally, during the May 23rd hearing, I notified Defendant before sentencing him that I was considering an upward variance; he did not request a continuance. (Tr. at 106:19-21.) Indeed, when I asked Defendant if there was any reason why the intended 24 month sentence should not be imposed, he answered no. (Tr. at 127:25-128:2.) In these circumstances, it is apparent that Defendant's notice claim is frivolous.

### C. *Additional Evidence*

Defendant now believes he should have been given the opportunity to present evidence that corroborates his ludicrous testimony that he obtained a passport not to flee to Canada, but to take a Caribbean cruise. (Doc. No. 484, Ex. 1 at 2.) I gave Defendant ample opportunity to present evidence to corroborate his testimony as required by Rule 32.1(b)(2)(C). (Tr. at 108:19-116:24.) Defendant never sought a continuance to obtain additional evidence. Indeed, he refused my offer of a continuance because he said he was "pretty well prepared" to go on with the revocation hearing. (Tr. at 6:2-3.) Finally, the evidence Defendant now wishes he had presented on May 23rd would have been beside the point: whether Defendant obtained his passport to travel on the Caribbean or to Canada, either trip would have violated his conditions of supervision.

### D. *Challenge to the Underlying Conviction*

Finally, Defendant argues he did not violate the condition of supervision requiring him to notify Probation within 72 hours of any change of address because he was in a Canadian prison. (Doc. No. 486.) Defendant thus challenges the underlying determination that he violated supervision—not the sentence I imposed for the violation. He may not make this challenge under

Rule 35. See Hill v. United States, 368 U.S. 424, 430 (1962) (challenges to conviction cannot be brought under Rule 35); United States v. Lika, 344 F.3d 150, 152-53 (2d Cir. 2003) (same). The challenge is, in any event, meritless. Defendant testified that he had access to a phone when he was imprisoned in Canada. (Tr. at 88:1-89:7.) I discredited Defendant's testimony that he tried to phone Probation at that time. Accordingly, Defendant violated the condition of supervision requiring him to notify Probation of a change of residence.

IV.  CONCLUSION

Defendant would "like to be resentenced now without the necessity of a tedious appeal." (Doc. No. 486.) Because Defendant's sentence is both substantively and procedurally reasonable, I will deny his Motion.

**AND NOW**, this 5th day of August, 2013, upon consideration of Defendant's Motion for Reconsideration (Doc. No. 484), the Government's Response (Doc. No. 493), and related submissions (Doc. Nos. 485, 486, 488, 489, 495), it is hereby **ORDERED** that Defendant's Motion is **DENIED**.

**AND IT IS SO ORDERED.**

/s/ Paul S. Diamond

Paul S. Diamond, J.